IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | | |
|---|---|---|
| JAMIE LEE BLEDSOE, #2150627 | § | |
| VS. | § | CIVIL ACTION NO. 2:17cv488 |
| HARRISON CO. JAIL MEDICAL, et al. | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff Jamie Lee Bledsoe, an inmate formerly confined at the Harrison County Jail proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983 alleging purported violations of his constitutional rights. The complaint was referred for findings of fact, conclusions of law, and recommendations for the disposition of the case.

The present Report and Recommendation concerns Defendant Moody's motion for summary judgment based on exhaustion, (Dkt. #47), Defendants' Burciaga, Clark, and Fox motion for summary judgment, (Dkt. #52), and Defendant Noel's motion for summary judgment, (Dkt. #61). For the foregoing reasons, it is recommended that the motions be granted and Bledsoe's civil rights lawsuit be dismissed with prejudice.

**I. Bledsoe's Complaint**

In his amended complaint, (Dkt. #13), Bledsoe maintains that Defendant Moody violated his rights by denying proper medical attention with regard to his prostate and dental needs. Specifically, he argues that since he entered the Harrison County Jail, he placed medical staff on notice of a "serious problem," concerning his prostate and an infection. He explains that he told medical about his diagnosis from Good Shepard Hospital, but medical would ignore his complaints "by repeatedly telling me that they would check with Good Shepard Hospital and get my records on the problem." Bledsoe states that he then looked up the definition of "cancer," which is a

1

"malignant tumor that tends to spread in the body[,] an abnormal state marked by such tumors, a malignant evil that spreads destructively." He argues that this definition "was the same thing that had occurred while repeatedly waiting on Harrison Co. Medical to take notice and refer[] me to a specialist for testing."

Bledsoe explains that instead of referring him to a specialist, he was placed on a 30-day wait period, given generic medications that did not work, and provided penicillin. The nurse explained to him that she checked with Good Shepard Hospital, who stated that Bledsoe had "a perfect prostate"—at which point Bledsoe decided to file this civil rights lawsuit.

Moreover, he contends that Defendant Moody engaged in the "erroneous" charging of money within his inmate trust fund account; specifically, Bledsoe contends that she has control over co-payments and has repeatedly made unauthorized charges and deductions.

Additionally, Bledsoe argues that Defendants Burciaga, Clark, and Fox—officers of the Marshall Police Department—committed conspiracy to taint the crime scene with physical evidence and filed false information regarding his conviction. In a letter to the Court, (Dkt. # 12), Bledsoe explains that Officer Burciaga filed a false report to establish probable cause for his arrest. Bledsoe requests that the Court investigate.

**II. Defendants' Motions for Summary Judgment**

Defendants filed three separate motions for summary judgment, (Dkt. #'s 47, 52, 61).

*A. Defendant Moody's Motion for Summary Judgment*

In her motion, (Dkt. # 47), Moody argues that Bledsoe failed to exhaust his required administrative remedies while at the Harrison County Jail. Specifically, she maintains that Bledsoe failed to file an appeal of any of his grievances. Moody highlights how Bledsoe filed several grievance forms while incarcerated at the Harrison County Jail, but never appealed the decisions—

despite receiving an inmate handbook specifically delineating the policy and procedures for filing grievances.

Bledsoe filed a reply to Moody's motion, (Dkt. #48). He maintains that because "findings" were "taken care of," there was no need for an appeal. At the same time, nevertheless, Bledsoe also contends that he did file appeals and that Mooty is attempting to conceal his appeal. Moody filed a reply to Bledsoe's response—attaching an affidavit from a Lieutenant at the Harrison County Jail, who completed a document search regarding Bledsoe's alleged appeals. The lieutenant states that Bledsoe wrote letters to Captain Hein and Sheriff McCool; however, they do not constitute grievances or appeals of grievances. A review of the letters, both dated in 2017, shows that Bledsoe was complaining about the punishment he received stemming from a disciplinary infraction as well as the lack of legal paper and books—rather than any medical issues or statements concerning Moody.

*B. Defendant Noel's Motion for Summary Judgment*

In his motion for summary judgment, (Dkt. #61), Noel, a physician assistant at Good Shepard Hospital, maintains that Bledsoe cannot pursue a civil rights claim against him because he was not acting under the color of state law when treating Bledsoe at the Harrison County Jail. Moreover, Noel insists that even if he were a state actor, he was not deliberately indifferent to Bledsoe's medical needs.

*C. Defendants' Burciaga, Clark, and Fox Motion for Summary Judgment*

Officers Burciaga, Clark, and Fox also filed a motion for summary judgment, (Dkt. 52). They assert that Bledsoe's complaint concerning his underlying conviction for burglary is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because his direct appeal is pending. After Bledsoe opposed the motion, (Dkt. # 69), Defendants filed a reply, (Dkt. #71), explaining that the Sixth

Court of Appeals affirmed Bledsoe's burglary conviction on May 8, 2018, and the Texas Court of Criminal Appeals subsequently refused his *pro se* petition for discretionary review on May 29, 2018.

**III. Summary Judgment Evidence**

*A. The Grievance System and Bledsoe's Grievances and Letters*

As mentioned, Defendant Moody attached several of Bledsoe's submitted grievances and letters. She also submitted affidavits and the Harrison County Jail's Handbook and Grievance Plan, which details its grievance policy and procedures.

Harrison County Jail's Grievance Plan denotes that its objective is "to provide an administrative means for the expression and resolution of grievances." In order to file a grievance, inmates are to ask correctional staff for a grievance form and envelope; the grievance officer then reviews the grievance "to determine whether it is an emergency, where delay could subject the inmate to personal injury or other damages, and then to determine whether there are legitimate grounds for a grievance." The officer is to respond to the inmate's grievance in writing with at least an interim response within fifteen days.

Crucially, "[i]f an inmate disagrees with the response by the grievance officer, he may appeal to the Grievance Review Board, which will be comprised of staff who are known to be neutral regarding the issue at hand." The board is to respond to the appeal, in writing, within fifteen days; if the inmate continues to disagree, "he may appeal in writing to the Sheriff, whose decision is final." A review of the jail's handbook illustrates that inmates are advised the following:

> **INMATE GRIEVANCE PROCEDURES**. You are allowed to file a grievance at any time you may be subjected to a violation of your civil rights, a criminal act, an unjust denial or restriction of inmate privileges or a prohibited act by facility staff while in custody of the Harrison County Sheriff's Office. To file a grievance, you must send a written

statement directly to the grievance officer, in a sealed envelope, stating the time, date, names of deputies and/or staff members involved, the pertinent details of the incident, including the names of any witnesses. (You may obtain a grievance envelope from any correctional staff member). All grievances will be promptly and thoroughly investigated and appropriate corrective action taken. You will receive a written response within 15 days.

*See* Dkt. #47-4, pg. 10 (sealed).

The summary judgment evidence also contains a copy of the Harrison County Jail's grievance forms. The form provides inmates a box where they can state their grievance and then sign and date the form. Prison officials then provide their response directly below in the "findings" box and also sign and date the response. Importantly, there is a space below both boxes wherein the inmate can indicate that he or she "request[s] [to] appeal to the grievance board" and/or "appeal to the Sheriff." (Dkt. # 47-5, pg. 1) (sealed).

Turning to Bledsoe's submitted grievances, the summary judgment evidence illustrates that Bledsoe submitted several grievances at the Harrison County Jail beginning in May 2017. In his first grievance, number 900328 and submitted on May 4, 2017, Bledsoe complains that he has a history of acid reflux and has been on medication for over two years. He explains that the medical department discontinued his medications without warning and requests an investigation as to why they were discontinued. The grievance officer responded the same day by noting that Defendant Noel, physician assistant, was given Bledsoe's refill request on April 4, 2017, "which was marked no refills." The grievance officer explained that she asked Noel about the refills again and "was advised he will discuss this matter when he sees you on May 31, 2017 with you [sic] results." She advised Bledsoe to retrieve antacids off the medical cart in the interim. (Dkt. # 47, pg. id. # 205). Bledsoe did not provide his signature or any indication that he requested to appeal that response to the grievance board or the sheriff.

5

In Bledsoe's next submitted grievance, number 900328 and dated July 6, 2017, he remarks that he was placed in segregation on July 5, 2017, "in violation of his civil rights." He explained that he filed a civil complaint in June 2017, showing that he has "a problem with [his] prostate and the medical staff were not providing proper medical care or not taking care of the problem." He explains that his prostate "got infected" and swells "causing tumor like boils to appear and then disappear as the prostate goes down." Bledsoe states that P.A. George Noel diagnosed "these boils [as] not contagious," but "Paula Moody has acted out of her profession without any of her knowledge of my prostate problem." On the backside of his grievance, Bledsoe implies that his placement in segregation was made in retaliation for his complaining.

The grievance officer provided a response on July 11, 2017. The officer responded that Bledsoe was "placed in segregation due to [his] statements to jail staff that [he] needed cleaning supplies for the toilet. [He] stated to them that you needed to clean up blood and pus from your using the toilet. It is policy to segregate any inmate with open sores that cause this." In response to Bledsoe's complaining about Defendant Noel, the grievance officer explained that they "only carry out his medical orders." (Dkt. # 47, pg. id. # 201) (sealed). Again, Bledsoe did not provide his signature or any indication that he requested to appeal the response to the grievance board or the sheriff.

Bledsoe submitted another grievance on July 7, 2017, number 900328. He noted that "it was alleged by medical staff that I had open sore which required me to be put in segregation because of the seriousness of the open sore and contagiousness." Bledsoe then stated that "a physician is in violation of [their] duty of care by [their] lack of diligence in attending [their] patient." He further noted that "it's a documented fact that Jaime Lee Bledsoe #900328 was placed in segregation by the advice in medical" and that no one has attended to "any of the alleged open

6

sores." He insists that there are no open sores and nothing contagious. The grievance officer responded on July 11, 2017, stating "answer on previous grievance form." (Dkt. # 47, pg. id. #203). Bledsoe again did not appeal the response.

Finally, the summary judgment evidence includes Bledsoe's grievances submitted in August and September 2017, in which he complained of his disciplinary infraction and lack of paper. Like his medical grievances, Bledsoe did not appeal. (Dkt. # 47, pg. id. # 206-07).

Defendant Moody also provided the Court with two of Bledsoe's hand-written letters, addressed to Captain Hein, dated August 26, 2017, and to Sheriff McCool, dated April 2017. In the letter to Sheriff McCool, Bledsoe asked for assistance to help him obtain legal paper and legal books. He also complained about the food, particularly fish patties that are served. (Dkt. # 50, pg. id. # 246). As for the second letter addressed to Captain Hein, Bledsoe complained about "harsh punishment" by the disciplinary board "without any concern of my civil rights while in custody." (Dkt. # 50, pg. id. # 244). As mentioned, Lieutenant Hein provided an affidavit stating that both letters "are not considered grievances or appeals of grievances." (Dkt. # 50, pg. id. # 242).

### B. Medical Letter sent to Sheriff McCool

Bledsoe sent another letter to Sheriff McCool on May 16, 2017. He explained that he has a serious problem with his prostate that requires medical care and has written to the Harrison County medical staff numerous times. He also noted that he filed a motion to a judge requesting a medical bond so he "can try to bond out and get back to Good Shepard medical to get a proper re-diagnosis of this prostate problem." Bledsoe states that the Harrison County Jail "personnel" has been treating "this problem with some type of generic medicine that is not curing the problem, I continue to put them on notice." Medical told him to "keep a hot towel over the boil," and he

explains that he is suffering from frequent urination and headaches. He ended his letter by requesting a medical bond or a bond reduction. (Dkt. #50, pg. id. # 249-50) (sealed).

**IV. Legal Standards**

A court shall grant summary judgment only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Rule 56(c), Fed. R. Civ. P. In determining whether there is a genuine dispute of a material fact, the court must examine the evidence and inferences drawn therefrom in the light most favorable to the nonmoving party. *See S.E.C. v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1994). Summary judgment is appropriate "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations omitted).

If the movant satisfies its initial burden of demonstrating the absence of a material fact dispute, then the non-movant must identify specific evidence in the summary judgment record demonstrating that there is a material fact dispute concerning the essential elements of its case for which it will bear the burden of proof at trial. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). The non-movant cannot survive a motion for summary judgment by resting on the allegations in his pleadings. *See Isquith v. Middle South Util., Inc.*, 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988). Rather, he must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). To carry this burden, the non-movant must present evidence sufficient to support a resolution of the factual disputes in his favor. *Anderson*, 477 U.S. at 257. The non-movant must submit competent summary judgment evidence sufficient

to defeat a properly supported motion for summary judgment. *See, e.g., Burleson v. Texas Dep't of Criminal Justice*, 393 F.3d 577, 589-90 (5th Cir. 2004).

The Fifth Circuit has held that summary judgment disposition is inappropriate if the evidence before the court, viewed as a whole, could lead to different factual findings and conclusions. *See Honore v. Douglas*, 833 F.2d 565, 567 (5th Cir. 1987). It is not the function of the trial judge—in ruling on a motion for summary judgment—to weigh the evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence. *Id.* at 567 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)).

## V. Discussion and Analysis

A review of the summary judgment evidence, viewed in the light most favorable to Bledsoe, shows that Defendants' motions for summary judgment should be granted.

### A. Exhaustion of Administrative Remedies

The summary judgment evidence—Bledsoe's grievances and letters—demonstrate that Bledsoe failed to exhaust his required administrative remedies while housed at the Harrison County Jail. It is well-settled that inmates must exhaust any and all administrative remedies before proceeding in federal court. *See Gonzalez v. Seal*, 702 F.3d 785, 787 (5th Cir. 2012) (explaining that pre-filing exhaustion is both mandatory and non-discretionary). Congress enacted the Prison Litigation Reform Act ("PLRA") in 1996, which mandated that no action shall be brought by a prisoner "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purpose of the prison exhaustion requirement is to "provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit." *See Bisby v. Garza*, 343 Fed.App'x 969, 971 (5th Cir. 2009); *see also Patterson v. Stanley*, 547 Fed.App'x 510, 511 (5th Cir. 2013) (explaining that the primary purpose of a grievance is to

give prison officials fair opportunity to address the problem that will later form the basis of the lawsuit); *Johnson v. Johnson*, 385 F.3d 503, 516 (5th Cir. 2004) (interpreting the exhaustion requirement in light of its purpose, which "include the goal of giving officials time and opportunity to address complaints internally.") (internal quotations and citation omitted).

The exhaustion provision was unanimously upheld by the Supreme Court in *Booth v. Churner*, 532 U.S. 731 (2001). The Court subsequently held that exhaustion is mandatory and that the requirement will not be excused when an inmate fails to properly exhaust his administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). Proper exhaustion means that an inmate must not only pursue all available avenues of relief but must also comply with all administrative deadlines and procedural rules. *Id.* at 90-91. The Fifth Circuit recently reiterated the principle that "[p]re-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012).

The Supreme Court elaborated further about the exhaustion requirement in *Jones v. Bock*, 549 U.S. 199 (2007). It was noted that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Id.* at 211. It was added, however, that the "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Id.* at 216. In light of *Jones v. Bock*, the Fifth Circuit provided guidance concerning how the exhaustion question should be handled in *Dillon v. Rogers*, 596 F.3d 260 (5th Cir. 2010). The following procedures were outlined:

> As a final matter, we now provide a brief summary of how district courts should approach exhaustion questions under the PLRA. When the defendant raises exhaustion as an affirmative defense, the judge should usually resolve disputes concerning exhaustion prior to allowing the case to proceed on the merits. If the plaintiff survives summary judgment on exhaustion, the judge may resolve disputed facts concerning exhaustion, holding an evidentiary hearing if necessary.

*Id.* at 272-73.

The summary judgment evidence illustrates that the Harrison County Jail employs a multi-step grievance procedure for inmates. As explained above, inmates at the jail are given a handbook that explains how they can submit grievances to jail staff and how grievance officials will review the grievances "to determine whether it is an emergency, where delay could subject the inmate to personal injury or other damages, and then to determine whether there are legitimate grounds for a grievance." The officer is then to respond to the inmate's grievance in writing within a set time period. If an inmate is dissatisfied with the result, he may file an appeal to the grievance board or the sheriff. Evidence in the record includes a copy of the utilized grievance form, which provides a section where inmates can indicate their request to appeal the decision to either the grievance review board or the sheriff.

Here, as Defendant Moody asserts, Bledsoe did not exhaust his required administrative remedies because he did not appeal any of his grievances. Not one of Bledsoe's grievances evince his signature, initials, or any mark whatsoever illustrating his desire to appeal the responses. His letters to Captain Hein and Sheriff McCool are not grievances, evidenced by the Harrison County Jail Handbook and Lieutenant Hein's affidavit. While he insists that Moody is concealing his efforts to appeal, he did not attach any summary judgment evidence to that effect. In fact, he readily admits that there was "no need" to appeal. (Dkt. #48, pg. 2.) Ultimately, the summary judgment evidence illustrates that Bledsoe did not pursue his grievance remedy to its conclusion.

Because Bledsoe failed to exhaust his required administrative remedies before filing his civil rights complaint, Defendant Moody's motion for summary judgment should be granted. *See Hicks v. Garcia*, 372 F. App'x 557, 558 (5th Cir. 2010) (unpublished) ("Because

he did not appeal the Grievance Board's decisions (or lack therefor) by filing a step-two grievance, however, Hick's failure to pursue his grievance remedy to conclusion constituted a failure to exhaust his administrative remedies."); *Hicks v. Lingle*, 370 F.App'x 497, 499 (5th Cir. 2010) (unpublished) ("Here, however, the [Tarrant County Jail] grievance process explicitly sets out two steps, and Hicks failed to comply with the second step. Consequently, Hicks failure to pursue his grievance remedy to conclusion constitutes a failure to exhaust his administrative remedies.").

As for Bledsoe's allegation that Defendant Moody has repeatedly made unauthorized medical charges from his trust account, the Court notes that this claim is wholly conclusory—made without a scintilla of support—and that he failed to exhaust this claim. A review of all of Bledsoe's grievances and letters show that he failed to raise this issue. Moreover, Bledsoe has not submitted any summary judgment evidence that he exhausted this issue in any of his responses to the various motions for summary judgment. One of his grievances shows that he complained that he never heard back on a commissary issue where jail officials "took" money and paper needed for court filings; however, this initial grievance does not mention anything related to medical and Bledsoe did not appeal the reply. Accordingly, summary judgment should be granted on this issue because Bledsoe wholly failed to place jail officials on notice of this purported problem.

*B. Deliberate Indifference*

Even if Bledsoe had sufficiently exhausted his administrative remedies, the summary judgment evidence and his own words show that he cannot demonstrate deliberate indifference. Exhaustion aside, the crux of Bledsoe's complaint is that prison officials—presumably Defendant Moody and Defendant Noel—acted with deliberate indifference to his serious medical needs stemming from his "prostate problems."

Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth Amendment violation and states a cause of action under section 1983. *See Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989). In *Farmer v. Brennan*, 511 U.S. 825, 835 (1994), the Supreme Court noted that deliberate indifference involves more than mere negligence. The Court concluded that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id*. at 837.

The Fifth Circuit has discussed the high standard involved in demonstrating deliberate indifference as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by medical personal does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id*. Furthermore, the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838.

*Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). In the medical care context, "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does an inmate's disagreement with his medical treatment, absent exceptional circumstances." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). Moreover, "medical records of sick calls, examinations, diagnosis, and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41F.3d 232, 235 (5th Cir. 1995).

Here, Bledsoe's own words in his complaint, submitted grievances, and letters show that prison officials at the Harrison County Jail did not act with deliberate indifference. Bledsoe insists that jail officials have denied him proper medical care for his prostate problems. He mentions how officials ignored his complaints and placed him on a 30-day wait period. However, he also states that the medical department referred him to a specialist for testing, provided him generic medications and penicillin, and that the department conferred with Good Shepard Hospital—wherein in the hospital explained that Bledsoe had a "perfect prostate."

Similarly, in his letter to Sheriff McCool, sent on May 16, 2017, Bledsoe stated that personnel at the Harrison County Jail have been "treating [his prostate problems] with some type of generic medicine," even though it was not curing the problem. He further indicated that the medical department advised him to use a hot towel. Accordingly, Bledsoe's own words—contained within the summary judgment evidence—show that the Harrison County Jail's medical department treated him, provided medications, conferred with Good Shepard Hospital, and advised him on how to treat his medical problems—thereby refuting his claims of medical deliberate indifference. Bledsoe has not provided any indication whatsoever that jail officials knew of his serious medical needs and then purposely disregarded them; in fact, the summary judgment evidence illustrates otherwise. For these reasons, both Defendant Moody and Defendant Noel's motions for summary judgment should be granted.

To the extent that Bledsoe insists that he has cancer or that he disagrees with the medical care or type of medications provided, his claims still fail. As for Bledsoe's statements concerning cancer—namely, that he looked up the definition and noticed that his symptoms matched the definition—the Court notes that when an inmate alleges a serious medical need for treatment or to avoid certain medical conditions, the inmate's bare assertion of a serious medical condition is

insufficient without medical evidence verifying that the condition exists. *See Aswegan v. Henry*, 49 F.3d 461, 465 (8th Cir. 1995); *accord*, *Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994) (prisoner's self-diagnosis alone will not support a medical conclusion); *McClure v. Foster*, civil action no. 5:10cv78, 2011 WL 665819 (E.D. Tex., January 7, 2011, *Report adopted at* 2011 WL 941442 (E.D. Tex., February 16, 2011, *aff'd* 465 F. App'x 373, 2012 WL 1059408 (5th Cir., March 29, 2012) (citing *Aswegan* and *Kayser*). In other words, an inmate's bare self-diagnosis does not demonstrate deliberate indifference.

Here, Bledsoe maintains that he looked up the definition of cancer, which revealed a definition that "was the same thing that had occurred while repeatedly waiting on Harrison Co. Medical to take notice and referred me to a specialist for testing." He provides no independent substantiation any cancer diagnosis, so his self-diagnosis of cancer does not illustrate any deliberate indifference. Moreover, to the extent he disagrees with any medical treatment or diagnosis, the Court notes that mere disagreement does not rise to the level of deliberate indifference. *See Gobert*, 463 F.3d at 346; *see also Blank v. Bell*, 634 Fed.App'x 445, 448 (5th Cir. 2016) ("Blank's desire to see Dr. Sandknop more often amounts to a disagreement over his treatment, which, as discussed supra, does not rise to the level of deliberate indifference.") (unpublished); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997) ("Disagreement with medical treatment does not state a claim for Eighth Amendment indifferent to medical needs."). For those reasons, Bledsoe's complaint should be dismissed.

*C. Bledsoe's Underlying Conviction*

Bledsoe alleges that certain defendants, officers of the Marshall Police Department, committed conspiracy to taint a crime scene with physical evidence and filed false information in

connection with his conviction. In a letter to the Court, (Dkt. # 12), Bledsoe explains that Officer Burciaga filed a false report, containing false statements, to establish probable cause for his arrest.

However, as the officers contend in their motion for summary judgment, Bledsoe's claims are barred. The Supreme Court has held that a plaintiff seeking damages under § 1983 for actions whose unlawfulness would render a conviction or a sentence invalid must first prove that the conviction or sentence has been reversed, expunged, invalidated, or otherwise called into question. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). The Court provided the following explanation:

> We think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution.

*Id*. at 486. The Court further held that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id*. at 487.

Here, records show that Bledsoe is serving a twenty-year sentence for burglary. A review of the Sixth Court of Appeals website shows that his direct appeal was affirmed on May 8, 2018, and that the Texas Court of Criminal Appeals refused his petition for discretionary review on July 25, 2018. A judgment in his favor—based on an alleged tainted crime scene and false information—would necessarily imply the invalidity of this conviction. Bledsoe has failed to demonstrate that his conviction has been invalidated or in any way called into question. Accordingly, his civil rights lawsuit is barred by *Heck*. *Id*. ("A claim for damages bearing that relationship to a conviction or sentence that has not been invalidated is not cognizable under §

1983."). Accordingly, the Defendants' motion for summary judgment based on *Heck* should be granted.

## VI. Conclusion

Defendants' motions for summary judgment should be granted. Bledsoe failed to exhaust his required administrative remedies with respect to his medical and inmate-trust-account claims. Moreover, he failed to show deliberate indifference—even if he exhausted. Bledsoe's allegations of a tainted crime scene and false information leading to his conviction are barred by *Heck*.

### RECOMMENDATION

For the foregoing reasons, it is recommended that Defendants' motions for summary judgment, (Dkt. #'s 47, 52, 61), be granted. Plaintiff's civil rights complaint should be dismissed with prejudice. Plaintiff's complaints regarding his conviction should be dismissed with prejudice to their being asserted again until the *Heck* conditions are met.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the District Judge on those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United States Auto Ass'n.*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

**SIGNED this 6th day of August, 2018.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE